UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

JAMES A BELL #105533                         CIV. ACTION NO. 3:22-01902 SEC P

VERSUS                                       JUDGE TERRY A. DOUGHTY

JERRY GOODWIN                                MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT & RECOMMENDATION

Petitioner James Anthony Bell ("Petitioner"), a prisoner in the custody of Louisiana's Department of Corrections proceeding pro se, filed this Petition for Writ of Habeas Corpus on approximately June 27, 2022, under 28 U.S.C. § 2254. [doc. # 1]. Petitioner attacks his conviction for ten counts of indecent behavior with juveniles and the forty-two-year imprisonment sentence imposed by the Third Judicial District Court, Lincoln Parish, State of Louisiana.[1]

For reasons assigned below, **IT IS RECOMMENDED** that Petitioner's claims be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

## Background

The Louisiana Second Circuit Court of Appeals ("the Trial Court") recounted the facts of the instant matter as follows:

> The defendant was originally charged by bill of information with four counts of molestation of a juvenile and three counts of indecent behavior with juveniles involving his girlfriend's daughter, A.C., and her niece, L.W. After several amended bills of information, the defendant was ultimately charged with 10 counts of indecent behavior with juveniles involving A.C. and L.W.
> The following evidence was adduced at trial, which commenced on May 20, 2014.
> The defendant was involved in a romantic relationship with the mother of A.C. and J.C. for approximately 12 years prior to the instant charges. Although the

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

couple did not reside together, [the defendant] did visit [the mother's] home frequently, and would often stay overnight.  The mother of A.C. and J.C. testified that she trusted the defendant with her children. In fact, at times the defendant was left at home alone with the children.

Counts one through nine charged the defendant with abuse concerning A.C., who was nine years old when the abuse began.  A.C. was 17 years old when she reported the abuse to her mother in April 2012.  Count 10 charged the defendant with abuse concerning L.W.

Deputy Taff Randal Watts testified that his involvement in the investigation began on April 23, 2012.  When he spoke with A.C.'s mother on April 25, 2012, she informed him that A.C., who was 17 at that time, stated that the defendant had sexually assaulted her for years.  After identifying the defendant's birth certificate, Watts testified that the defendant was 48 years old at the time of the complaint.

The Department of Child and Family Services ("DCFS") was notified, and A.C. and her younger sister, J.C., were interviewed at the Pine Hills Advocacy Center.  Watts, who was present for the interview, authenticated the video recordings, which were introduced into evidence and played for the jury.

During A.C.'s interview, she spoke of incidents beginning when she was nine years old, where the defendant would either come into her bedroom, or take her out of her bedroom, and touch her breasts and vagina outside of her clothes. These incidents became progressively worse, and continued until A.C. was 16 years old.

A.C. stated that the last incident occurred in April 2012.  The defendant went into her room while she was on the phone with her friend, Kendrick Armstrong. A.C. stated that she put her phone under her pillow and the defendant molested her.  After the defendant left her room, A.C. informed Armstrong of what had taken place.  Armstrong urged her to tell her mother, which she did the following day.  Watts verified this incident by talking with Armstrong.  A.C. expressed her hesitation to report the abuse because the defendant told her that if she did tell anyone she would have to go to the Methodist Children's Home "like the first girl."

During J.C.'s interview, she stated that she saw the defendant "on A.C." at least 10 to 20 times in the bedroom that the two sisters shared.  J.C. told her mother what she witnessed.  When the interviewer asked J.C. to place . . . dolls in the position that she observed the defendant and A.C. in, she placed the female doll on her back and the male doll with his head between her legs.  J.C. also stated that the defendant had touched her legs before, and that it made her uncomfortable.

After these interviews were played for the jury, L.W.,[2] the second victim and A.C.'s older cousin, testified.  L.W., who was 23 years old at the time of trial, testified that she would visit A.C. and J.C.'s home several times a week, sleeping either in the spare bedroom or on the couch.  She described five incidents of abuse, beginning in 2006, when she was 15 or 16 years old.  The first incident occurred during Easter 2006, when the defendant sat next to L.W. on [a] couch, placed his hand on her leg, and asked her if she was sexually active with her boyfriend.  L.W.

---

[2] At the time of trial, L.W. was incarcerated for her participation in an armed robbery.

told the defendant "no" and he rubbed her thigh with his hands. The second incident occurred when, as L.W. was sleeping in [a] spare bedroom, the defendant came into the room, woke her up and asked her if she wanted [to do] anything. She testified that she responded "do what," and the defendant proceeded to touch her breasts and vagina outside of her clothes. The third incident occurred when the defendant entered the bathroom while she was taking a bath. She immediately wrapped a towel around herself, but the defendant began to touch her while exposing himself to her. The defendant unsuccessfully attempted to make her touch his penis. The fourth incident also occurred while L.W. was bathing. She was unable to wrap a towel around herself, and the defendant touched her vagina, but did not penetrate it. The final incident occurred while L.W. was sitting on [a] couch. A.C. and J.C.'s mother was cooking dinner, and the other [children] were outside playing. L.W. testified that the defendant sat down next to her and attempted to "feel on her." She told him to stop, and threatened to tell her mother if he continued the abuse. The defendant then got up and left the room. After the abuse commenced, L.W. stopped spending the night at A.C. and J.C.'s house.

L.W. also testified that she had a conversation with A.C. regarding the defendant sexually abusing A.C. L.W. told A.C. that if the defendant abused A.C. again, they would tell A.C.'s mother. L.W. did not inform A.C., or anyone else, that the defendant was also sexually abusing her.

A.C., who was 19 years old at the time of trial, testified that the defendant began sexually abusing her in 2004. The first incident occurred when the defendant came into her and her sister's room one night and took her into the hallway while her mother was in the bathtub. A.C. testified that the defendant "began to kiss my breasts, my neck and on my vagina with my clothes on." A.C. was only nine years old. A.C. expressed her fear, stating that the defendant told her that "if I told anyone, I would go to jail — to the children's home like the other little girl."

A.C. testified that the defendant continued to sexually abuse her two to three times per week while her mother was away from the home, or in the bathtub. Her mother questioned her about the defendant's actions, but A.C. stated that she denied the allegations because she was afraid. She also stated that she knew her mother loved the defendant, and that she "didn't want to hurt her." A.C. also testified that the defendant would give her $20.00 when he inappropriately touched or sexually abused her. A.C. also admitted that she talked to L.W. about the defendant's abuse.

J.C., who was 14 years old at the time of trial, testified that she saw "something happen" between A.C. and the defendant. J.C. saw the defendant with his head between A.C.'s legs at least 10 times in the bedroom she shared with A.C. She testified that A.C. would be crying when the abuse occurred. She also observed the defendant come into their bedroom and take A.C. out of the room. J.C. told her mother three times about what she saw take place between A.C. and the defendant. J.C. also testified that the defendant came in her bedroom and touched her upper thigh. She was afraid and told her mother what had occurred.

The mother of A.C. and J.C., whose relationship with the defendant ended when she became aware of the abuse, testified that when A.C. was nine or 10, J.C. told her that the defendant was getting A.C. out of bed at night and taking her to the couch. She subsequently questioned A.C. and the defendant about the allegations,

and both of them denied that anything occurred. She witnessed the defendant giving A.C. money, but A.C. and the defendant denied any reason for the money being given. On April 21, 2012, A.C. told her about the sexual abuse that had taken place. She immediately took A.C. to the sheriff's office, and then to the hospital. No physical examination or rape kit was performed due to the length of the abuse and the fact that no sexual intercourse had occurred.

       The jury found the defendant guilty as charged on all counts of indecent behavior with a juvenile. He was sentenced to serve seven years at hard labor and [fined $5,000] for each count. The trial court ordered the sentences for counts 1, 3, 6, 7, 9 and 10 to run consecutively, and the sentences for counts 2, 4, 5, and 8 to run concurrently.

*State v. Bell*, 179 So.3d 683, 686-88 (La.App. 2d Cir. 2015).

On September 30, 2015, the Louisiana Second Circuit Court of Appeals ("the Direct Appeal Court") affirmed Petitioner's conviction and sentence on direct appeal. *Id.* at 694. The Louisiana Supreme Court denied Petitioner's writ of certiorari on February 10, 2017. *State v. Bell*, 215 So.3d 701 (La. 2017). Petitioner did not apply for certiorari before the United States Supreme Court. Habeas Petition [doc. #1, p. 3].

Thereafter, on June 8, 2017, Petitioner filed an application for post-conviction relief before the Third Judicial District Court, Lincoln Parish ("the Post-Conviction Court"). Application for Post-Conviction Relief [doc. #1-3, pp. 1-35]. The application contained four claims related to ineffective assistance of counsel. *Id.* On March 12, 2018, the Post-Conviction Court denied Petitioner's claim for ineffective assistance of counsel concerning "other crimes" evidence and ordered further briefing on his remaining claims. Third District Post Conviction Rulings [doc. #1-3, pp. 36-37]. On August 1, 2019, Petitioner raised a fifth claim concerning the reading of the bill of information into the record. Second Supplemental Application for Post Conviction Relief [doc. #1-3, p. 208]. One month later, the Post-Conviction Court dismissed Petitioner's cumulative error claim and ordered briefing by the state on the remaining ineffective

assistance of counsel claims. *Id.* at pp. 38-39. Petitioner's remaining ineffective assistance of counsel claims were denied on June 15, 2021. *Id.* at pp. 45-46.

On July 28, 2021, Petitioner applied for supervisory writs with the Louisiana Second Circuit Court of Appeals. Application for Supervisory Writs [doc. #1-3, pp. 47-64]. That application was denied on September 2, 2021. Second Circuit Writ Rulings [doc. #1-3, p. 89]. Petitioner applied for certiorari before the Louisiana Supreme Court on October 29, 2021. Application for Certiorari [doc. #1-3, pp. 90-105].

Petitioner filed a motion for reconsideration on December 13, 2021, alleging that the Post-Conviction Court never ruled on his fifth claim. M/Reconsideration [doc. #1-3, pp. 204-06]. The Post-Conviction Court denied the motion on December 21, 2021. Ruling [doc. #1-3, pp. 229-31].

On February 22, 2022, Petitioner applied for supervisory writ with the Second Circuit concerning his fifth claim. Second Application for Supervisory Writes [doc. #1-3, pp. 242-52]. The application was denied on May 5, 2022. Second Circuit Writ Ruling [doc. #1-3, p. 253]. Petitioner then applied for a writ of certiorari with the Louisiana Supreme Court concerning his fifth claim on May 22, 2022. Second Application for Certiorari [doc. #1-3, pp. 254-69].

On June 1, 2022, after reconsideration, the Louisiana Supreme Court denied the October 29 application for certiorari. Certiorari Ruling [doc. #1-3, p. 108].

Petitioner filed a petition for habeas relief in this court on June 27, 2022. Habeas Petition [doc. #1]. Petitioner brings five claims, arguing that he received ineffective assistance of counsel when counsel at trial ("Trial Counsel") failed to object to (1) "other crimes" evidence and (2) prosecutorial vouching of witness credibility during the State's closing argument and (3) declined to move to quash Count Nine of the Bill of Information. Memorandum in Support of

Habeas Petition [doc. #1-2, pp. 3-9]. Petitioner contends this conduct resulted in (4) cumulative errors rendering the trial fundamentally unfair. *Id.* at pp. 10-12. Finally, Petitioner argues (5) the Bill of Information was not read to the jury in contravention of Louisiana law. *Id.* at pp. 12-18.

On October 18, 2022, the Supreme Court of Louisiana denied Petitioner's second application for writ of certiorari. Second Certiorari Ruling [doc. #7-1, p. 1].

On November 7, 2022, following a stay pending resolution of the related state proceedings, the Court directed the Clerk to prepare summons and serve a copy of the petition on the Warden of David Wade Correctional Center, the Attorney General of the State of Louisiana, and the District Attorney for the Third Judicial District Court, Lincoln Parish, (collectively "Respondents"). [doc. #9]. The Court ordered Respondents, through the District Attorney, to file an answer to the petition, a memorandum brief in support of all issues raised in the answer, a certified copy of the state court record, including transcripts of all proceedings held in state courts, certified copies of all documents filed in connection with any appeal, and certified copies or citations to all state court dispositions pertaining to the conviction under attack. *Id.*

On March 13, 2023, Respondents filed their response. Response to Habeas Petition [doc. #17]. Petitioner filed a reply on May 17, 2023. Reply to Response to Habeas Petition [doc. #26].

Briefing is complete. Accordingly, this matter is ripe.

<u>**Discussion**</u>

**I.    Standard of Review**

Habeas corpus relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under section 2254, a

reviewing federal court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d)(1)–(2). "The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1)[-(2)], the record is limited to the one before the state court, even if the state court issued a summary affirmance." *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398, 1402 (2011)).

Under section 2254(d)(1), a question of law is "contrary to" clearly established law if the state court decision "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Neal v. Vannoy*, 78 F.4th 775, 783 (5th Cir. 2023) (quoting *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc)).

> A decision involves an unreasonable application of federal law under section 2254(d)(2) if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362, 407–08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ). The state court's decision must not just be wrong; it must be unreasonable—meaning no "fairminded jurist" could possibly agree with it. *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

*Jackson v. Davis*, 756 F. App'x 418, 419 (5th Cir. 2018). The "state court's ruling on the claim being presented in federal court" must be "so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded

disagreement." *Neal*, 78 F.4th at 783 (quoting *Langley*, 926 F.3d at 156); *see also White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 219-20 (2014)).

Additionally, in reviewing a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Supreme Court has made clear that section 2254 "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Wheeler*, 577 U.S. at 77 (citing *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

## II.    Analysis of Claims

Petitioner argues five bases for habeas relief.  Petitioner makes three claims for ineffective assistance of counsel, arising from Trial Counsel's apparent failure to object to (1) "other crimes" evidence and (2) prosecutorial vouching of witness credibility, and (3) declining to move to quash Count Nine of the Bill of Information.  Petitioner's fourth claim is that (4) the cumulative effect of Trial Counsel's errors rendered the trial fundamentally unfair.  Finally, Petitioner argues that (5) a failure to read the Bill of Information in accordance with Louisiana law impermissibly tainted his trial.  The undersigned first reviews the law governing ineffective assistance of counsel claims and then analyzes Portioner's arguments in turn.

### a.    *Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims have two components.  First, the petitioner must show that counsel's performance was deficient, meaning the errors counsel made were so serious that they were "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "[A] conscious and

informed decision on trial tactics and strategy cannot be the basis for constitutional ineffective assistance of counsel" unless the decision was so "ill chosen" that it tainted "the entire trial with obvious unfairness." *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). The metric of attorney performance is reasonableness under prevailing professional norms. *Hinton v. Alabama*, 571 U.S. 263, 273 (5th Cir. 2014). There is a "strong presumption" that, under the circumstances, counsel's course of action was sound trial strategy. *Strickland*, 466 U.S. at 689. The petitioner must identify each unreasonable action of counsel. *See Trevino v. Davis*, 829 F.3d 328, 349 (5th Cir. 2016) ("[A] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

To satisfy the second element of an ineffective assistance of counsel claim, the petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires a showing of a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* at 694. "A reasonable probability" is one sufficient to undermine confidence in the trial's outcome. *Id.*

b.     *Claim I – Failure to Object to Admission of Evidence Concerning Other Crimes*

Petitioner's first claim for habeas relief is predicated on Trial Counsel's failure to object to introduction of evidence concerning Petitioner's "other crimes." Petitioner argues that Trial Counsel neglected to object to the State introducing evidence of Petitioner's past sexual interactions with minors to illustrate his lustful disposition. Memorandum in Support of Habeas Petition [doc. #1, p. 1]. He contends that the evidence should not have been admitted because the alleged victim was over the age of 17 at the time of the "relationship." *Id.* He further

contends that the admission of this evidence violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In cases where the defendant is accused of a sex crime involving an underaged victim, the Louisiana Code of Evidence allows admission of evidence regarding past crimes or acts that "indicate [the defendant's] lustful disposition toward children," so long as that evidence is more probative than prejudicial.  Art. 412.2(A).[3, 4]  Article 412.2 "was enacted to loosen restrictions on 'other crimes' evidence," *State v. Wright*, 79 So.3d 309, 317 (La. 2011), and has been found to allow introduction of wide-ranging evidence.  *See, e.g., State v. Klein*, 252 So.3d 973 (La.App. 4th Cir. 2018) (finding no abuse of discretion in admitting testimony of adults abused as children in support of charges for child pornography); *State v. Farrier*, 162 So.3d 1233 (L.App. 4th Cir. 2015) (finding no abuse of discretion in admitting jailhouse call wherein defendant did

---

[3] Article 412.2(A) of the Louisiana Code of Evidence reads as follows:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

[4] Under Louisiana law, all relevant evidence is generally admissible at trial.  *Id.* at art. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id.* at art. 401.  However, relevant evidence should be excluded if its probative value is outweighed by its potential to unfairly prejudice a party.  *Id.* at art. 403. Additionally, evidence of other crimes, wrongs, or acts committed by the defendant generally may not be admitted for purposes of showing that the defendant acted in conformity with those past acts.  *Id.* at art. 404(B)(1).  Evidence of such past acts pose a "substantial risk of grave prejudice to the defendant."  *State v. Williams*, 708 So.2d 703, 725 (La. 1998) (quotation omitted).  The Louisiana Code of Evidence provides an exception to this general rule of inadmissibility when, *inter alia*, the evidence "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding."  LA. CODE EVID ANN. art. 404(B)(1).  As discussed *supra*, article 412.2 provides another exception to this general rule.

not deny showing pornographic material to a minor in support of charges for sexually abusing the same minor). If the State intends to offer evidence pursuant to article 412.2, the defendant may request notice in advance of trial regarding the nature of that evidence. LA. CODE EVID. art. 412.2(B).

Petitioner argues that Trial Counsel failed "to object to the testimony of [S.J.,] whose testimony was admitted for the sole purpose of showing Petitioner's lustful disposition." Memorandum in Support of Habeas Petition [doc. #1-2, p. 1]. Petitioner contends that Trial Counsel did not advise the Trial Court that S.J. was no longer a minor when the sexual conduct described in her testimony occurred.[5] Reply to Response to Habeas Petition [doc. #26, p. 2]. According to Petitioner, Trial Counsel should have elucidated "the specific dangers of the unfair prejudice to [Petitioner] by admitting [S.J.'s] testimony, which in turn could have, with reasonabl[y] certain probability, mislead the jury into believing that [Petitioner] only targeted children for sexual pleasure." *Id.* at p. 3.

The Post-Conviction Court denied Petitioner's first claim on the basis that the issue had already been fully litigated on direct appeal. Third District Post Conviction Rulings [doc. #1-3, p. 36]. Turning to that decision, the Direct Appeal Court observed that Trial Counsel objected to S.J.'s testimony and the Trial Court heard arguments about their admissibility. *State v. Bell*, 179 So.3d 683, 692 (La.App. 2d Cir. 2015). The Trial Court found the testimony would establish a

---

[5]It does not appear disputed that S.J. testified that she first had contact with Petitioner when she was 15 or 16 years of age, but that contact continued after she reached the age of 17. *See, e.g.* [doc. #17-6, p. 26 (Petitioner's state court appellate brief not disputing S.J's testimony that she was approached at 15 or 16 years of age, but noting the alleged differences in Petitioner's conduct with S.J. as compared to the victim and others.)]. Certainly, Petitioner has not shown by clear and convincing evidence that evidence that he had improper contact with S.J. occurred prior to the age of 17.

lustful disposition toward children and admitted it subject to a limiting instruction.[6]  *Id.* at 692-93.  On this record, the Direct Appeal Court found the Trial Court has not abused its discretion pursuant to Louisiana Code of Evidence article 412.2 and thus a finding of ineffective assistance of counsel would be without merit.  *Bell*, 179 So.3d at 693.  In so doing, the court noted that S.J.'s testimony concerning Petitioner's abuse toward her comparable to the abuse he subjected the other victims to.  *Id.*

The Post-Conviction Court properly endorsed the Direct Appeal Court's holding concerning this claim.  Petitioner does not argue that the Post-Conviction Court improperly found Trial Counsel's conduct vis-à-vis S.J.'s testimony to be reasonable.  Rather, he contests whether there was a showing of a reasonable probability that Trial Counsel's alleged error was dispositive of the trial's outcome.  There is no indication in the record that the Post-Conviction Court resolved this issue differently than the Supreme Court would or that the court lacked justification to rule as it did.  As discussed *supra*, Trial Counsel objected to the testimony and there were efforts to mitigate the impact S.J.'s testimony had on the jury's decision.  *See also* Trial Transcript pt. 2 [doc. #17-5, p. 41] (The State: "We expect that [S.J.'s testimony] will show not only a propensity for sexually assaultive behavior but also a lustful disposition towards teenage girls in general. . . . I would submit that any limiting instruction would cure any concerns

---

[6] The jury received the following limiting instruction concerning S.J.'s testimony:

> Evidence that the defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose.  The sole purpose for which such evidence may be considered is whether it tends to show that defendant had the lustful disposition to commit the crime charged.  You may not find him guilty for these offenses merely because he may have committed another offense.

*Id.*

the defense may have as it relates to this particular testimony."); *id.* at p. 43 (The Trial Court: "[T]here has to be a limiting instruction [regarding S.J.'s testimony] given to the jury so I'll go ahead and tell you, it looks like that's going to be in the jury charge . . . ."). Based on the record, it would be improper to find that the Post-Conviction Court's adjudication of Petitioner's claim for ineffective assistance of counsel concerning "other crimes" testimony was contrary to, or an unreasonable application of, clearly established federal law. As argued, Petitioner cannot establish that his Due Process rights were violated by the application of article 412.2 in the instant case.

Accordingly, the claim fails.

c.    *Claim II – Failure to Object to Prosecutorial Vouching*

Petitioner's second claim for habeas relief concerns alleged ineffective assistance of counsel arising from a failure to object to the State's closing argument. Specifically, Petitioner argues that the State impermissibly vouched for the credibility of witnesses, which Trial Counsel should have objected to. Memorandum in Support of Habeas Petition [doc. #1, p. 3].

Under Louisiana law, parties must limit their arguments to admitted evidence, lack of evidence, conclusions to be drawn from evidence, and governing law. LA. CODE CRI. PROC. ANN. art. 774. Commenting on the credibility of witnesses is "proper and within the scope of closing argument where the credibility of the witness is in question and the facts bearing on the witness's credibility appear in the record." *State v. Deckelman*, No. 2011 KA 0296, 2011 WL 4436529, at * 10 (La.App. 1st Cir. Sep. 14, 2011). Louisiana courts have found witness credibility to be at issue when the topic is explored in depth at trial. *See id.* ("The facts bearing on the credibility of [the witnesses] were explored at length during the trial and the prosecutor's arguments properly focused on those facts . . . ."); *State v. Davenport*, 978 So.2d 1189, 1194

(La.App. 2d Cir. 2008) ("The facts bearing on the witnesses' credibility were explored at length during the trial and the prosecutor's arguments properly focused on those facts . . . .").  However, it is improper for prosecutors "to vouch for or assert his or her personal opinion of the credibility of a witness when doing so implies that the prosecutor has additional knowledge or information about the case which has not been disclosed to the jury."  *State v. Williams*, 69 So.3d 556, 559 (La.App. 2d Cir. 2011) (citing *State v. Smith*, 554 So.2d 676 (La. 1989), *overruled on other grounds*).[7]  Under Louisiana law, irregularities or errors must be objected to contemporaneously to be preserved for appeal.  LA. CODE CRI. PROC. art. 841.[8]

The Post-Conviction Court denied Petitioner's claim on the basis that the State's closing argument contained permissible 'bolstering,' not 'vouching' as alleged.  Third District Post Conviction Rulings [doc. #1-3, p. 45].  The court observed that the State's statement "Kendrick strikes me as being an honest straightforward young man" could possibly be seen as vouching but found this statement to be mere bolstering given the context of the closing argument.  *Id.*

The undersigned finds the Post-Conviction Court's was neither contrary to, nor unreasonable application of, clearly established federal law.  The record does not show that the

---

[7] Respondent cites the federal Fifth Circuit Court of Appeals standard for prosecutorial vouching, which is substantially the same as Louisiana's standard: The test "for improper vouching for the credibility of a witness is 'whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt."  *United States v. McCann*, 613 F.3d 486, 496 (5th Cir. 2010) (quoting *United States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977)); *see also* Response to the Writ of Habeas Corpus [doc. #17, p. 15] (quoting *McCann* and *Ellis*).  As the trial occurred in Louisiana state court and was governed by that state's procedural and evidentiary rules, Louisiana state law is relevant to the instant analysis.

[8] The contemporaneous objection rule exists to both allow the trial judge to correct the error at the appropriate time and to serve notice in the record that the conduct was "so noticeable as to create prejudice in the minds of the jurors."  *State v. Allen*, 126 So.3d 675, 683 (La.App. 4th Cir. 2013) (quoting *State v. Taylor*, 635 So.2d 416, 420 (La.App. 4th Cir. 1994)).

State's discussion of witness credibility in its closing was objectionable.  As Petitioner repeatedly observes, there was no physical evidence in this case.  *See, e.g.*, Memorandum in Support of Habeas Petition [doc. #1, p. 7] ("[I]n Petitioner's case there is no physical evidence . . . .").  In lieu of such evidence, the instant case turned on witness testimony.  Much of the trial consisted of the parties alternatively establishing and rebuffing the credibility of witnesses.  *See, e.g.,* Trial Transcript pt. 2 [doc. #17-5, p. 5] (State examining witness J.C. concerning truthfulness of testimony); *id.* at pp. 53-54 (Trial Counsel cross-examining witness S.J. regarding criminal record and age at the time of relevant events).  As the credibility of witnesses was at issue, this topic was a valid subject for closing argument.

Furthermore, the State's discussion of credibility did not suggest that there was additional evidence that had been withheld from the jury.  The undersigned identifies the below instances in which the State vouched for the credibility of witnesses:

- "Kendrick [Armstrong] sat here, took time off from his job at Denny's, came in from Texas.  It's important enough to him to do that and he told you truthfully what he knew." *Id.* at p. 65 (introducing summary of Armstrong testimony regarding overheard interaction between A.C. and Petitioner).

- "Kendrick [Armstrong] strikes me as being an honest straightforward young man." *Id.* at p. 66 (providing color to summary of Armstrong advising A.C. to tell her mother about Petitioner's abuse).

- "You heard from [J.C.] and she told you the truth." *Id.* at p. 85 (answering rhetorical questions regarding Petitioner's conduct).

- "You know the defense wants to make or take issue with the fact that all [the witnesses'] stories aren't exactly consistent.  I'd submit to you that that in and of

itself show that they're telling the truth." *Id.* (rebuffing Trial Counsel's arguments concerning witness credibility).

- "[T]hese girls, they're not cunning. They're courageous. They're absolutely courageous for doing what they're doing and telling the truth." *Id.* at p. 88 (countering Trial Counsel's arguments regarding witness credibility).

- "If [J.C. is] lying why not say that he touched my vagina, he touched my rear end? She's not lying. She told you what she knows." *Id.* at p. 90 (rebuking Trial Counsel's arguments contesting witness credibility).

- "[L.W.] hasn't received any benefit whatsoever for appearing here and testifying. No reduction in sentence. Nothing. She's told you the truth." *Id.* (parrying Trial Counsel's arguments regarding witness credibility).

- "They're not lying. These girls told the truth." *Id.* (concluding summarization of witness testimony and arguments concerning credibility).

- "These girls have told you the truth and I ask that you return to that jury room to deliberate, consider all the evidence that's been presented and return with a verdict that you know in your hearts is true." *Id.* at p. 91 (rebuffing Trial Counsel's arguments concerning witness credibility).

None of the instances of vouching hint at potential additional evidence. Rather – as the Post-Conviction Court held – the State bolstered its closing arguments by emphasizing the witness' characters; making rhetorical points; and refuting Trial Counsel's arguments concerning credibility. Such bolstering is permissible and, thus, unobjectionable. As bolstering is permissible, it was reasonable under prevailing professional norms for Trial Counsel to withhold objections. Accordingly, it would be improper to find that Trial Counsel's failure to object

constituted counseling so deficient as to deny Petitioner his Sixth Amendment right to counsel. Finally, given the inappropriateness of an objection here, it is improper to find that Trial Counsel's failure to object prejudiced the defense.  Thus, the Post-Conviction Court properly adjudicated Petitioner's claim regarding ineffective assistance of counsel concerning objections to prosecutorial vouching.

Accordingly, the claim fails.

d.    *Claim III – Failure to Quash Count Nine*

Petitioner's third basis for habeas relief is ineffective assistance of counsel predicated on a failure to quash Count Nine of the of the Bill of Information.

Louisiana law provides several grounds for a motion to quash.  *See generally* LA. CODE CRIM. PROC. ANN. art. 532.  Of relevance here, a motion to quash is appropriate if "[t]he indictment[9] fails to charge an offense which is punishable under a valid statute."  *Id.* at art. 532(1).  If a bill of information "identifies the conduct charged and the statute violated, a motion to quash will not be sustained."  *State v. Susan*, 357 So.3d 1000, 1006 (La.App. 2d Cir. 2023) (citing *State v. Gainey*, 376 So.2d 1240, 1242 (La. 1976)).

Count Nine concerns Petitioner's sex acts with A.C. when she was a minor.[10]  Petitioner argues that because A.C. was seventeen years of age when one of the alleged acts occurred, Trial

---

[9] The term "indictment" here includes bills of information.  *Id.* at art. 934(6).

[10] The full text of Count Nine is as follows:

> [O]n or about between January 1, 2012[,] through April 22, 2012, [Petitioner] committed a lewd or lascivious act upon or in the presence of a juvenile bearing the initials A.C. and having a date of birth of 4/3/1995, a child under the age of seventeen (17) years of age, with the intention of arousing or gratifying the sexual desires of either person.  At the time of the offense [Petitioner] was seventeen (17) years of age or older and there was an age difference of greater than two (2) years between [Petitioner] and juvenile A.D."

Counsel should have moved to quash the count. Memorandum in Support of Habeas Petition [doc. #1-2, pp. 8-9]. The State counters that Count Nine provides a date range for the alleged illegal acts and the jury was presented with evidence of acts within that range that occurred prior to A.C. turning seventeen.

The Post-Conviction Court denied this claim as Petitioner failed to challenge the propriety of Count Nine on appeal. Third District Post Conviction Rulings [doc. #1-3, p. 45]. A review of the state court record confirms that Petitioner did not raise any arguments concerning Count Nine before the Direct Appeal Court. *See generally State v. Bell*, 179 So.3d 683 (La.App. 2d Cir. 2015). Neither did Petitioner raise an ineffective assistance of counsel claim as to the failure of his counsel on appeal ("Appellate Counsel") to raise this argument. To the extent that Petitioner can raise a habeas challenge to *Trial* Counsel's failure to move to quash Count Nine, such a claim fails.

Count Nine plainly states that the charge is satisfied by a single act. *See* Sixth Amended Bill of Information [doc. #17-1, p. 12] ("[Petitioner] committed *a* lewd or lascivious act . . . .") (emphasis added). This means that a single instance of Petitioner committing a lewd or lascivious upon or in the presence of A.C. prior to her turning seventeen – the conduct prohibited by statute – within the stated date range would satisfy the Bill of Information. Count Nine clearly states the conduct charged, and the Bill elsewhere identifies the relevant statute.[11] Accordingly, it would have been inappropriate for Trial Counsel to move to quash Count Nine based on its text alone.

---

Sixth Amended Bill of Information [doc. #17-1, p. 12].
[11] The Bill of Information charges that Petitioner committed the offense of Indecent Behavior with Juveniles as defined in LA. REV. STAT. ANN. § 14:81(a)(1). Sixth Amended Bill of Information [doc. #17-1, p. 12].

Evidence of a single impermissible sex act involving A.C. during the stated date range would be sufficient to make a motion to quash at trial inappropriate. The trial record reveals evidence of much more than a single illegal act during the relevant period. A.C. testified that Petitioner committed improper sex acts in her presence "[t]wo to three times a week" starting when she was fourteen years old. *See* Trial Transcript pt. 1 [doc. #17-4, p. 79] (A.C. testifying to moving to Highway 146 when she was fourteen years old); *id.* at p. 83 (A.C. testifying to Petitioner's conduct after moving to Highway 146). The witness confirmed this rate of abuse on cross examination. *Id* p. 89. In short, there was evidence of Petitioner engaging in the conduct described in Count Nine multiple times a week for at approximately three years before A.C. turned seventeen years old. There was sufficient evidence in the record of conduct punishable under valid Louisiana law. It would therefore be inappropriate to move to quash Count Nine. The decision to not move to quash the count was thus reasonable under prevailing professional norms, meaning that decision did not deny Petitioner his Sixth Amendment right to counsel. Furthermore, given the weak grounds a motion to quash would rest upon here, there is no reasonable probability that the failure to make such a motion prejudiced the defense. There is thus no basis to find that the Post-Conviction Court adjudicated Petitioner's ineffective assistance of counsel claim regarding Count Nine in a manner contrary to, or via unreasonable application of, clearly established law.

Accordingly, the claim fails.

e.    *Claim IV – Cumulative Errors*

Petitioner's final argument of the ineffective assistance of counsel species is that the combined effects of Trial Counsel's errors rendered the entire trial fundamentally unfair. Memorandum in Support of Habeas Petition [doc. #1, p. 10]. Petitioner limits Trial Counsel's

19

putative errors to the three discussed above. *Id.* at p. 11 ("As it was discussed in each of the prior Grounds raised herein, there is sufficient grounds for Petitioner to claim that the cumulative errors committed during his trial made his trial unconstitutional and fundamentally unfair."); Reply to Response to Habeas Petition [doc. #26, pp. 7-8] (describing Trial Counsel's errors as failing to object to other crimes evidence and prosecutorial vouching, and failing to move to quash Count Nine of the Bill of Information).

The Supreme Court has recognized that the collective impact of cumulative errors at trial may justify habeas relief. *See Kyle v. Whitley*, 514 U.S. 419, 421-22 (1995) ("Because the net effect of the [errors here] raises a reasonable probability that [remediation] would have produced a different result, [petitioner] is entitled to a new trial."). Under the cumulative error doctrine, relief is appropriate when the constitutional errors at trial so "fatally infected" the proceeding that it was rendered fundamentally unfair. *Carty v. Quarterman*, 345 F.App'x 897, 909 (5th Cir. 2009). The Fifth Circuit has promulgated minimum standards for application of the doctrine. First, the errors must be just that – errors – not unfavorable rulings or events. *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) (en banc). Second, the errors cannot be procedurally barred from habeas review. *Id.* Third, errors of state law, including evidentiary error, are not cognizable unless they render the trial unfair to the point of denying the petitioner due process of law. *Id.* Finally, the reviewing court should analyze the record as a whole to determine whether the errors more likely than not caused a suspect verdict. *Id.* Non-errors (i.e., conduct that a court finds to not be in error despite a petitioner's arguments) have no weight in this analysis. *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc); *United States v. Thomas*, 724 F.3d 632, 648 (5th Cir. 2013) ("[T]here is no precedent supporting the idea that a series of

'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden [required to show ineffective assistance of counsel].").

The Post-Conviction Court denied Petitioner's claim on the basis that it was repetitive of the three previously discussed claims.  Third District Post Conviction Rulings [doc. #1-3, p. 38].

As previously established, Petitioner identified only the three putative errors of Trial Counsel analyzed above.  Per the analysis *supra*, there were in fact no errors by Trial Counsel rising to the level of a valid ineffective assistance of counsel claim.  It would be improper to find that the cumulative effect of these non-errors merits habeas relief.  Furthermore, as discussed above, there is no evidence in the record that any of the supposed errors more likely than not resulted in a suspect verdict.  Accordingly, it would be improper to find that the Post-Conviction Court's adjudication of Petitioner's claim for cumulative error was contrary to, or an unreasonable application of, clearly established federal law.

The claim fails.

*f.   Claim V – Failure to Read the Bill of Information to the Jury*

Petitioner's fifth and final claim concerns presentation of the Bill of Information to the jury.  To be exact, Petitioner argues that Louisiana law was abrogated because the record does not show the Bill of Information was read to the jury after voir dire.  Memorandum in Support of Habeas Petition [doc. #1, pp. 12-15]; Reply to Response to Habeas Petition [doc. #26, p. 9].[12]

---

[12] Petitioner gestures towards another ineffective assistance of counsel claim in relation to the presentation of the Bill of Information.  *See* Reply to Response to Habeas Petition [doc. #26, p. 10] ("[When the Bill of Information should have been read it] seemed as though [Trial] Counsel just stood by and did nothing to have this matter put on the record in the proper manner, which should call into question as to why [Trial] Counsel did not call this matter to the court's attention[.]").  However, there is no briefing of this putative claim by Petitioner, so the argument has not been properly put before the Court.

Under that law, the "normal order of trial," in relevant part, begins with the selection and swearing of the jury followed by the reading of the indictment or bill of information. La. Code Cri. Proc. Ann. art. 765(1)-(2). Louisiana law further requires a record of "all of the proceedings." *Id.* at art. 843.

The Post-Conviction Court denied this claim on the basis that the Bill of Information was indeed read to the jury. Ruling [doc. #1-3, pp. 230-31]. The undersigned agrees that the record indicates proper procedure was followed with regards to the reading of the Bill.

The selection and swearing of the jury are not transcribed in full, but the record shows that these procedural steps occurred. Jury Selection Transcript [doc. #1-3, p. 236] ("Jury selection continued but is not requested transcribed so, therefore, is not a part of this preparation."); *see also id.* at pp. 236-39 (trial judge providing instructions to principal and alternate jurors concerning trial procedure). Thereafter, the clerk of court read the bill of information to the jury. *Id.* at p. 239 ("Clerk reads Bill of Information"). On this record, the Bill of Information was properly read to the jury in accordance with article 765. While the text of the Bill of Information is not contained in the stenographic transcript of the proceeding, the full text of the controlling Bill of Information (as well as the preceding six versions) are all in the record. *See* Bills of Information [doc. #17-1, pp. 11-24]. This negates Petitioner's concern that Appellate Counsel – different than Trial Counsel – may be unable to discharge their duty based on an incomplete record. *See* Memorandum in Support of Habeas Petition [doc. #1-2, pp. 14-17] (arguing an incomplete trial record is grounds for remedy on the basis that it prejudices appellate counsel).

The cases Petitioner cites to argue that Appellate Counsel was prejudiced by a supposedly deficient record in fact support a contrary finding: A parenthetical reference in the

22

stenographic transcript to the reading of the Bill of Information – as is the case here – is sufficient.  It is clear from Fifth Circuit precedent cited by Petitioner that statutes should be given a somewhat liberal construction in this context.  *See United States v. Upshaw*, 448 F.2d 1218, 1223 (5th Cir. 1971) ("Within the statutory scheme we do not reach our conclusion by a mechanistic approach to the effect that if a transcript is less than complete and appellate counsel is different from trial counsel a conviction is subject to automatic reversal on appeal or automatic postconviction relief.").  Furthermore, laws mandating a complete trial record are primarily concerned with preserving improper arguments made by the state.  *See Fowler v. United States*, 310 F.2d 66, 67 (5th Cir. 1962) ("The requirement is mandatory and without a transcript of the argument of counsel we are unable to determine whether the United States Attorney made such prejudicial comment as to require reversal.").  In short, the record is sufficient and indicates that the Bill of Information was properly presented to the jury.  It would be improper to find that the Post-Conviction Court's resolution of this claim was contrary to, or an unreasonable application, federal law.

Accordingly, the claim concerning the Bill of Information fails.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Petitioner's claims be **DENIED** and the petition be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report

and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2).

In Chambers, at Monroe, Louisiana, on this 27th day of December, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

24